## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EVAN BROWN,

                                Plaintiff,

        v.

VITO PERUGINO, et al.,

                                Defendants.

CIVIL ACTION NO. 1:22-CV-01400

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendants Vito Perugino ("Officer Perugino") and Michael Schmidt ("Sergeant Schmidt") (collectively, "Defendants"). (Doc. 17). *Pro se* prisoner-Plaintiff Evan Brown ("Brown"), a prisoner incarcerated at Dauphin County Prison, initiated this 42 U.S.C. § 1983 civil rights action against Defendants by filing a complaint on September 8, 2022. (Doc. 1). Defendants filed the motion for summary judgment on February 20, 2023. (Doc. 17). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 14). For the following reasons, the Court will grant Defendants' motion for summary judgment. (Doc. 17).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

        This factual background is taken from Defendants' statement of material facts and accompanying exhibits. (Doc. 18). Brown has filed his response to Defendants' statement of facts and has provided accompanying supplements. (Doc. 21). Where Brown disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. As Brown is proceeding *pro se*, the Court will liberally construe his pleadings to accurately reflect what the record provides. Pursuant to Local Rule 56.1, the Court accepts as

true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Brown as the non-moving party, with all reasonable inferences drawn in his favor.

At all times relevant to the complaint, Defendants were police officers employed by Pennsylvania Capitol Police Department. (Doc. 18, ¶ 1; Doc. 1, at 1). On November 3, 2018, Officer Perugino was on uniformed patrol in a marked vehicle when he observed an individual, later identified as Brown, crouched down near the Capitol complex wall. (Doc. 18, ¶ 2; Doc. 18-1, Suppression Hearing Tr. 9:1-10:1, Oct. 6, 2021). Officer Perugino stopped his vehicle and asked Brown through the window if he was okay. (Doc. 18, ¶ 3; Doc. 18-1, Suppression Hearing Tr. 16:6-16, Oct. 6, 2021; Doc. 18-2, at 8). As he could not hear Brown's response, Officer Perugino exited his vehicle and approached Brown, again asking if he was okay.[1] (Doc. 18, ¶ 3; Doc. 18-1, Suppression Hearing Tr. 16:6-16, Oct. 6, 2021; Doc. 18-2, at 8). As Officer Perugino approached Brown, he observed Brown stand up and begin to collect items off the wall. (Doc. 18, ¶ 4; Doc. 18-1, Suppression Hearing Tr. 10:21-25, Oct. 6, 2021; Doc. 18-2, at 8). Officer Perugino noticed a 24-ounce can of Steel Reserve Hard Pineapple alcoholic beverage on the wall within arm's reach of Brown.[2] (Doc. 18, ¶ 4; Doc. 18-1, Suppression Hearing Tr. 10:21-11:5, Oct. 6, 2021; Doc. 18-2, at 8). Officer Perugino noticed that Brown was holding a Pennsylvania driver's license belonging to a white female, later

---

[1] Brown denies this assertion, stating "Officer Perugino does not state that he exited his vehicle because he could not hear [Brown], or that he asked [Brown] if he was okay again." (Doc. 21, ¶ 3, at 7-8).

[2] Brown denies this assertion, stating "Officer Perugino did not state the flavor of the alcoholic beverage, or that it was in arms reach in either affidavit of probable cause." (Doc. 21, ¶ 3, at 7-8).

identified as Rebecca Grady. (Doc. 18, ¶ 5; Doc. 18-1, Suppression Hearing Tr. 11:15-24, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 1, ¶ 4). Officer Perugino testified that at that point, he detained Brown to investigate an open container violation based on his proximity to the can of Steel Reserve.[3] (Doc. 18, ¶ 6; Doc. 18-1, Suppression Hearing Tr. 12:2-7, Oct. 6, 2021; Doc. 18-2, at 8). He was also interested in determining why Plaintiff had a female driver's license and to whom the license belonged. (Doc. 18, ¶ 6; Doc. 18-1, Suppression Hearing Tr. 12:2-7, Oct. 6, 2021; Doc. 18-2, at 8).

Officer Perugino asked Brown to have a seat on the wall and asked him about the driver's license. (Doc. 18, ¶ 7; Doc. 18-1, Suppression Hearing Tr. 12:8-17, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 1, ¶ 4). Brown stated that it belonged to his girlfriend and denied that the can of Steel Reserve was his. (Doc. 18, ¶ 7; Doc. 18-1, Suppression Hearing Tr. 12:8-17, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 1, ¶ 4). Officer Perugino testified that while he was talking to Brown, Brown made several furtive movements: he repeatedly reached into his pockets, refused to stay seated on the wall, and constantly moved away from Officer Perugino. (Doc. 18, ¶ 8; Doc. 18-1, Suppression Hearing Tr. 12:18-13:6, Oct. 6, 2021; Doc. 18-2, at 8). Officer Perugino further testified that Brown ignored at least four or five commands to stop moving, relax, and stay seated on the wall.[4] (Doc. 18, ¶ 8; Doc. 18-1, Suppression Hearing Tr. 12:18-13:6, Oct. 6, 2021; Doc. 18-2, at 8). In the middle of this interaction, Officer Musbashar

---

[3] Brown denies this assertion, stating "Officer Perugino did not state in his original affidavit of probable cause that the container was open. Officer Perugino lied and added open container to the refiled affidavit of probable cause." (Doc. 21, ¶ 6, at 7-8). Brown further maintains that "[t]he container was not open." (Doc. 21, at 4).

[4] Brown denies this assertion, stating "Officer Perugino did not state in his original affidavit of probable cause that [Brown] was instructed to stop moving, relax, and stay seated on the wall. Officer Perugino lied and added that he instructed [Brown] not to do in the refiled affidavit of probable cause." (Doc. 21, ¶ 8, at 7-8).

Chaudry ("Officer Chaudry") arrived on the scene, observed Brown ignoring Officer Perugino's commands, and told Brown that if he could not remain seated, he would be handcuffed.[5] (Doc. 18, ¶ 9; Doc. 18-1, Suppression Hearing Tr. 12:18-13:12, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 18-3, at 5).

Thereafter, Officer Chaudry informed Brown that he was going to be placed in handcuffs as he could not obey commands.[6] (Doc. 18, ¶ 10; Doc. 18-1, Suppression Hearing Tr. 13:1314:12, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 18-3, at 5; Doc. 1, ¶ 4). Officer Perugino testified that as Officer Chaudry grabbed Brown's hand to handcuff him, Brown pulled away and a scuffle ensued in which Officer Chaudry deployed his taser and eventually the officers were able to get Brown under control and into handcuffs. (Doc. 18, ¶ 10; Doc. 18-1, Suppression Hearing Tr. 13:13-14:13, Oct. 6, 2021; Doc. 18-2, at 8; Doc. 18-3, at 5-6; Doc. 1, ¶ 4). Officer Perugino testified that after the scuffle, he noticed a strong odor of pineapple alcohol on Brown, the same flavor as the can of Hard Pineapple Steel Reserve.[7] (Doc. 18, ¶ 11; Doc. 18-1, Suppression Hearing Tr. 15:1-5, Oct. 6, 2021). After Brown was identified, it was discovered that he had an active National Crime Information Center ("NCIC") warrant for Flight to Avoid Apprehension. (Doc. 18, ¶ 12; Doc. 18-2, at 8).

On November 3, 2018, Officer Perugino charged Brown with Resisting Arrest under

---

[5] Brown denies this assertion, stating "Officer Perugino did not state in his original affidavit of probable cause that he gave [Brown] commands." (Doc. 21, ¶ 9, at 7-8).

[6] Brown denies this assertion, stating "Officer Chaudry is the only one that informed [Brown] that he was being detained." (Doc. 21, ¶ 10, at 7).

[7] Brown denies this assertion, stating "Officer Perugino did not state in his original affidavit of probable cause, or the re-filed affidavit of probable cause, that he noticed a strong odor of pineapple alcohol on [Brown], the same flavor as the can of Hard Pineapple Steel Reserve." (Doc. 21, ¶ 11, at 7-8).

18 Pa. C.S.A. § 5104, and Public Drunkenness under 18 Pa. C.S.A. § 5505. (Doc. 18, ¶ 13; Doc. 18-2, at 8). On November 19, 2018, these charges were dismissed by Magisterial District Judge David O'Leary after a preliminary hearing. (Doc. 18, ¶ 14; Doc. 18-4); *see Commw. of Pa. v. Brown*, MJ-12104-CR-0687-2018. On March 6, 2019, Dauphin County Deputy District Attorney Katie L. Adams ("ADA Adam") advised the Capitol Police Department that she had reviewed the matter and approved re-filing charges of Resisting Arrest, Public Drunkenness, and Flight to Avoid Apprehension.[8] (Doc. 18, ¶ 15; Doc. 18-5).

On March 11, 2019, Officer Perugino re-filed the following charges against Brown: Resisting Arrest under 18 Pa. C.S.A. § 5104, Public Drunkenness under 18 Pa. C.S.A. § 5505, and Flight to Avoid Apprehension under 18 Pa. C.S.A. § 5126. (Doc. 18, ¶ 16; Doc. 18-2; Doc. 18-6; Doc. 1, ¶ 2). The affidavit of probable cause for the re-filed charges is identical to the initial affidavit, except for the addition of the words "and the open container," and "which he was instructed not to do," the Flight to Avoid Apprehension charge, and a final paragraph voting ADA Adam's approval of the re-filing.[9] (Doc. 18, ¶ 16; Doc. 18-2; Doc. 18-6; Doc. 1, ¶ 2). Specifically, the charges in both the November 3, 2018, and March 11, 2019, criminal

---

[8] Brown denies this assertion, stating "Cannot prove authenticity of document from ADA Adams dated March 5, 2019, approving charges to be re-filed." (Doc. 21, ¶ 15). Brown cites a document that states "After speaking with ADA Adams the charges were approved to be re-filed with the addition of Flight to Avoid Apprehension as well as the two previous charges. Approved by Sgt. Schmidt and filed on 03-11-19." (Doc. 21, ¶ 15, at 10; Doc. 18-3, at 6).

[9] Brown denies this assertion, stating "The affidavit of probable cause for the re-filed charges is *not* identical to the initial affidavit. Defendant Perugino *added* in the re-filed affidavit that he asked [Brown] to sit on the wall until the issue with the open container was resolved." (Doc. 21, ¶ 16, at 7-8) (emphasis in original). Brown also states "Defendant Perugino *added* in the re-filed affidavit the statement 'which he was instructed not to do.'" (Doc. 21, ¶ 16, at 7-8) (emphasis in original).

complaints filed against Brown were Resisting Arrest and Public Drunkenness. (Doc. 18-2; Doc. 18-5). On May 20, 2019, the re-filed charges were held for court after a preliminary hearing at which Brown did not appear. (Doc. 18, ¶ 17; Doc. 18-7, at 6). Brown failed to appear for a scheduled court hearing on February 6, 2020, and a bench warrant was issued for his arrest. (Doc. 18, ¶ 18; Doc. 18-7, at 10; Doc. 1, ¶ 6). He was arrested on that warrant on February 14, 2020, and remanded to Dauphine County Prison. (Doc. 18, ¶ 18; Doc. 18-7, at 11; Doc. 1, ¶ 6). A bench warrant hearing was held on February 18, 2020, at which time his bail was set at $5,000. (Doc. 18, ¶ 18; Doc. 18-7, at 11; Doc. 1, ¶ 6). This is the first time bail was set in this case. (Doc. 18, ¶ 18; Doc. 18-7, at 11; Doc. 1, ¶ 6). Brown remained in Dauphin County Prison until he posted bail on June 19, 2020. (Doc. 18, ¶ 18; Doc. 18-7, at 11-12; Doc. 1, ¶ 6).

Another bench warrant was issued for Brown on January 15, 2021. (Doc. 18, ¶ 19; Doc. 18-7, at 15; Doc. 1, ¶ 6). Brown was arrested on that warrant on March 23, 2021, and bail was raised to $10,000. (Doc. 18, ¶ 19; Doc. 18-7, at 15-16; Doc. 1, ¶ 6). Brown was held in Dauphin County Prison until he posted bail on August 17, 2021. (Doc. 18, ¶ 19; Doc. 18-7, at 16; Doc. 1, ¶ 6).

On August 30, 2021, Brown filed a motion to suppress evidence, and a hearing was held on October 6, 2021. (Doc. 18, ¶ 20; Doc. 18-7, at 21-22). After that hearing, Judge Curcillo found that Officer Perugino's initial approach of Brown was not a mere encounter, and that Officer Perugino did not possess the requisite reasonable suspicion to detain Brown based on his observation that Brown was crouching by the Capital complex wall. (Doc. 18, ¶ 21; Doc. 18-1, Suppression Hearing Tr. 24:17-25:9, Oct. 6, 2021). Accordingly, Judge Curcillo suppressed the evidence and dismissed the charges. (Doc. 18, ¶ 21; Doc. 18-1, Suppression

Hearing Tr. 24:17-25:9, Oct. 6, 2021). Judge Curcillo did not address whether probable cause existed for the later arrest. (Doc. 18, ¶ 21; Doc. 18-1, Suppression Hearing Tr. 24:17-25:9, Oct. 6, 2021).

On September 8, 2022, Brown initiated this *pro se* § 1983 civil rights action by filing a complaint against Defendants in their individual capacities, bringing claims of malicious prosecution under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. (Doc. 1, ¶ 1). Brown alleges that Officer Perugino amended the affidavit of probable cause to include false statements that did not appear in the initial affidavit, and then re-filed the charges "out of spite," because they were dismissed at Brown's first preliminary hearing. (Doc. 1, ¶¶ 2-7). As relief, Brown seeks compensatory and punitive damages in excess of $1.5 million. (Doc. 1, at 5). Defendants filed an answer on November 14, 2022, and the case proceeded to discovery. (Doc. 11). Discovery closed on January 20, 2023. (Doc. 12). On January 31, 2023, Brown filed a letter with the Court requesting a discovery conference.[10]

---

[10] In the letter, Brown asserts that Defendants have not complied with his discovery requests and requests a conference with the Court to discuss the alleged discovery deficiencies. (Doc. 16, at 1-2). At the onset, the request for discovery is untimely because it was filed more than a week after the discovery period had closed in this case. (Doc. 11; Doc. 16); *see Bautista v. Carey*, No. 1:21-CV-00126, 2023 WL 157991, at *4 (M.D. Pa. Jan. 11, 2023) (denying plaintiff's motion to compel discovery because plaintiff failed to show due diligence where the motion was filed well after the discovery period had closed). Further, pursuant to Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection[,]" where discovery has been previously requested, but not answered, designated, or produced. *See* Fed. R. Civ. P. 37(a)(3)(B). The party seeking such discovery is required to "include a certification that the movant has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." See id. at 37(a)(1); *Lofton v. Wetzel*, No. 12-cv-01133, 2015 WL 5761918, at *2 (M.D. Pa. Sept. 29, 2015) (discussing and applying Fed. R. Civ. P. 37(a)(1) to *pro se* prisoner's motion to compel discovery). Here, however, Brown's motion to compel discovery has not included a certification that he has, in good faith, conferred or attempted to confer with opposing counsel before seeking intervention from the Court. As a result, the Court finds that Brown's motion to compel discovery does not satisfy Rule 37 of the Federal Rules of Civil

(Doc. 16). Defendants filed the motion for summary judgment on February 20, 2023, as well as a statement of facts and brief in support. (Doc. 17; Doc. 18; Doc. 19). On March 8, 2023, Brown filed a brief in opposition and response to Defendants' statement of material facts. (Doc. 20; Doc. 21). Defendants filed a reply brief on March 22, 2023. (Doc. 22).

The motion for summary judgment has been fully briefed and is now ripe for disposition. (Doc. 17; Doc. 18; Doc. 19; Doc. 20; Doc. 21; Doc. 22).

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

Procedure. (Doc. 16). Accordingly, the Court will deny Brown's motion to compel discovery and will proceed, therefore, by addressing Defendants' motion for summary judgment.

judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore,* 24 F.3d at 512. "The party moving for summary judgment bears the initial burden of showing the basis for its motion . . . [and i]f the movant meets that burden, the onus then 'shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial.'" *Triad Controls, Inc.,* 593 F. Supp. 2d 741, 749 (E.D. Pa. 2009) (citing *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir.2001)). "Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[11] *Velentzas v. U.S.,* No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 869 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 869 (quoting *Berckeley Inv. Grp., Ltd. V. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006)). If the non-moving party

---

[11] See also *Beenick v. LeFebvre,* 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

"fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir.2007). Further, "[t]he mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Turco v. City of Englewood, N.J.*, 935 F.3d 155, 161 (3d Cir. 2019) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)).

III.   **DISCUSSION**

In their motion, Defendants argue that the Court should grant summary judgment in their favor for the following reasons: (1) Brown has not adduced any evidence that Officer Perugino made false statements in the re-filed affidavit or lacked probable cause to re-file the charges; (2) Brown's claims fail as a matter of law because his arrest on the bench warrant is a superseding cause that relieves Defendants of liability; (3) Brown's § 1983 claims fail because the prosecutor, not any Defendant, "initiated the criminal prosecution;" (4) the state law claims are barred by sovereign immunity; and (5) Brown cannot establish Sergeant Schmidt's liability given his lack of involvement in the prosecution. (Doc. 19, at 9). In opposition, Brown argues that the Court should deny Defendants' motion for summary judgment because there are material facts in genuine dispute. (Doc. 20, at 1). Brown asserts that Defendants did not have probable cause to support Brown's arrest because the can of Hard Pineapple Steele Reserve was not open, Office Perugino did not see Brown touch the can, Officer Perugino

made false statements in the re-filed affidavit, and Officer Perugino lied to ADA Adams to convince her to approve the charges being refiled. (Doc. 20-1, at 4-7).

A. THE STATE LAW CLAIMS ARE BARRED BY PENNSYLVANIA SOVEREIGN IMMUNITY.

In the complaint, Brown asserts "Officer Perugino was acting under color of state law as a Police Officer for the Pennsylvania Capitol Police violated [Brown]'s Fourth Amendment under the United States Constitution and Article 1 Section 8 under the Pennsylvania Constitution that protects him from unreasonable searches and seizures." (Doc. 1, at 2). Defendants move to dismiss these claims as barred by sovereign immunity. (Doc. 19, at 19). In opposition, Brown asserts that sovereign immunity is unavailable because Officer Perugino submitted false allegations in the re-filed affidavit of probable cause. (Doc. 20-1, at 6-7). Brown does not provide any support for this assertion. (Doc. 20-1).

Pursuant to Article I, Section 11 of the Pennsylvania Constitution, the General Assembly of Pennsylvania declared that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Const. Stat. § 2310. Pennsylvania courts have held that "when an employee of a Commonwealth Agency was acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional tort claims." *Minor v. Kraynak*, 155 A.3d 114, 121-22 (Pa. Commw. Ct. 2017). To determine whether a state employee is protected by sovereign immunity, a court considers (1) whether the employee was acting within the scope of his or her employment; (2) whether the alleged act which causes injury was negligent and damages would be recoverable

but for the availability of the immunity defense; and (3) whether the act fits within one of the nine (9) exceptions to sovereign immunity.[12] *Minor*, 155 A.3d at 121-22.

"Without question, a police officer's acts of investigating criminal conduct, filing criminal charges, and arresting individuals suspected to have committed crimes are within the scope of his employment." *Garcia v. Wind Creek Bethlehem, LLC*, No. 5:22-CV-00292, 2022 WL 4130754, at *12 (E.D. Pa. Sept. 12, 2022) (citing *Ginter v. Skahill*, No. 04-2444, 2006 WL 3043083 at *12 (E.D. Pa. Oct. 17, 2006) (holding that the trooper "was acting within the scope of his duties as a Pennsylvania State Trooper when he investigated and applied for arrest warrants for Plaintiffs" and was immune from "claims of false imprisonment, false arrest and malicious prosecution")). "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.' " *Brumfield*, 232 F.3d at 381 (quoting *Shuman Estate v. Weber*, 419 A.2d 169 (Pa. Super. 1980)). "Where a state trooper is on duty and investigating a crime throughout the duration of the alleged offenses, [he] is acting within the scope of his employment and sovereign immunity will require the dismissal of state law claims against [him]." *DeForte v. Borough of Worthington*, 364 F.Supp.3d 458, 487 (W.D. Pa. 2019); *see also La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. 1992) (holding that a state trooper was immune from liability for false prosecution, false arrest, and abuse of process claims).

---

[12] These nine (9) exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522.

Neither party contends any of the statutory exceptions to sovereign immunity apply to his case. Rather, Defendants submit that they are entitled to sovereign immunity on the state law claims because Brown has not alleged or adduced any facts to suggest Defendants were not acting within the scope of their employment. (Doc. 19, at 21). Although Brown does not specifically allege Defendants "acted within the course and scope of [their] employment," Brown does allege that "Officer Perugino was acting under color of state law as a Police Officer for the Pennsylvania Capitol Police . . . ." (Doc. 1, at 2). As it is well-established that police officers employed by the Commonwealth of Pennsylvania act within the scope of their employment when they file criminal charges, and Brown has not alleged or adduced any facts to the contrary here, the Court finds that Defendants are immune from liability on the state law claims. *See Garcia*, 2022 WL 4130754, at *12; *Ginter*, 2006 WL 3043083 at *12.

Accordingly, Defendants' motion for summary judgment on Brown's state law claims is granted as barred by sovereign immunity.

B. SUMMARY JUDGMENT IS GRANTED AS TO THE CLAIMS AGAINST SERGEANT SCHMIDT FOR LACK OF PERSONAL INVOLVEMENT.

In the complaint, the only mention of Sergeant Schmidt is the following:

Sergeant Michael Schmidt acting under color of law as a Police Officer for the Pennsylvania Capitol Police violated [Brown]'s Fourth Amendment United States Constitutional right and Pennsylvania Article 1 Section 8 Constitutional right to be free from unreasonable searches and seizures when he co-signed and approved the lies and constitutional violations in Officer Perugino's second criminal complaint.

(Doc. 1, at 4; Doc. 18-3, at 6).

However, Brown does not allege Sergeant Schmidt's personal involvement in the underlying arrest or allege any facts to suggest Sergeant Schmidt knew or should have known that the

statements in Officer Perugino's second affidavit were false. The only mention of Sergeant

Schmidt is a notation at the end of Officer Chaudry's report stating:

> This case was heard in front of MDJ O'Leary, in which all charges were dismissed. After speaking with ADA Adams the charges were approved to be re-filed with the addition of Flight to Avoid Apprehension as well as the two previous charges. Approved by Sgt. Schmidt and filed on 03-11-19.

(Doc. 18-3, at 6).

In most cases, "a prosecutor rather than a police officer initiates a criminal

prosecution." *Zeglen v. Miller*, No. 3:04CV1940, 2008 WL 696940, at *8 (M.D. Pa. Mar. 12,

2008), *aff'd in part, appeal dismissed in part sub nom. Zeglen v. Pappert*, 317 F. App'x 233 (3d Cir.

2009) (citation omitted); *see also, Merrero v. Micewski,* No. Civ. A. 96-8534, 1998 WL 414724,

at *15 (E.D. Pa. July 22, 1998) ("a plaintiff can not proceed against a police officer for a claim

of malicious prosecution because a prosecutor, not a police officer, 'initiates' proceedings

against an individual."); *Reed v. City of Chicago,* 77 F.3d 1049, 1053 (7th Cir. 1996) ("a

malicious prosecution action against police officers is 'anomalous,' since "the State's

Attorney, not the police, prosecutes a criminal action."). Even if a prosecutor brings charges,

"[a] person can be liable for malicious prosecution if he 'fails to disclose exculpatory evidence

to prosecutors, makes false or misleading reports to the prosecutor, omits material

information from the reports, or otherwise interferes with the prosecutor's ability to exercise

independent judgment in deciding whether to prosecute.'" *Telepo v. Palmer Twp.,* 40 F. Supp.

2d 596, 610 (E.D.Pa.1999) (quoting *Garcia v. Micewski*, No. 97–5379, 1998 WL 547246, at *6

(E.D. Pa. Aug. 24, 1998)). A police officer can be liable for initiating a prosecution "if he or

she 'knowingly provided false information to the prosecutor or otherwise interfered with the

prosecutor's informed discretion.'" *Brockington v. City of Philadelphia,* 354 F. Supp. 2d 563, 569

(E.D. Pa. 2005) (quoting *Gatter v. Zappile,* 67 F. Supp. 2d 515, 521 (E.D. Pa. 1999)).

The Court agrees with Defendants that no evidence exists to indicate that Sergeant Schmidt initiated charges against Brown or otherwise violated his civil rights. (Doc. 19, at 21-22). Brown has not responded to Defendants' motion to dismiss regarding his claims against Sergeant Schmidt. Here, Sergeant Schmidt did not file an affidavit of probable cause, is not alleged to have made any false reports or claims, and is not alleged to have interfered with the prosecutor's judgment in any way. Further, Sergeant Schmidt was not the officer that arrested Brown or filed charges against him, and was not "intimately involved with the criminal proceedings from beginning to end." *See Shoop v. Dauphin Cty.*, 766 F. Supp. 1327, 1338 (M.D. Pa. 1991). The evidence in this case indicates that Officers Perugino and Chaudry arrested Brown after finding evidence that indicated to them a crime had occurred, and passed that information along to a prosecutor who determined that charges should be brought. (Doc. 18-3). Brown has, therefore, offered no evidence by which a juror could conclude that the Officers knowingly provided Sergeant Schmidt with false information, and the Court cannot conclude that a jury could find that Sergeant Schmidt was responsible for the charges against Brown. Thus, Sergeant Schmidt cannot be a person who " initiated the criminal prosecution," and Brown's Fourth Amendment malicious prosecution claim against him fails as a matter of law. *See Zeglen,* 2008 WL 696940, at *8-9).

Accordingly, summary judgment is entered in Defendants' favor as to the claims against Sergeant Schmidt.

C. SUMMARY JUDGMENT IS GRANTED AS TO BROWN'S § 1983 CLAIMS OF A FOURTH AMENDMENT VIOLATION.

Brown asserts a § 1983 Fourth Amendment malicious prosecution claim against Officer Perugino, alleging that "[o]n March 11th, 2019, Officer Perugino initiated/instituted a criminal proceeding against [Brown] when he re-filed the charges of public drunkenness,

resisting arrest, and added the charge of flight to avoid apprehension." (Doc. 1, at 2). In addition, Brown alleges the Officers lacked probable cause and acted with malice "when he lied in his second criminal complaint making it seem like [Brown] wanted to run and tried to run;" when he "re-filed the charges out of spite because the charges were dismissed at [Brown]'s preliminary hearing." (Doc. 1, at 3).

To prevail on a § 1983 Fourth Amendment malicious prosecution claim, a plaintiff must establish that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

> *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (quoting *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

Pursuant to the first element, "only a person who initiates criminal proceedings may be liable for malicious prosecution." *Taylor v. City of Phila.*, No. 96-740, 1998 WL 151802 at *9 (E.D. Pa. Apr. 1, 1998). Police officers, as opposed to prosecutors, may be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor. *Halsey*, 750 F.3d at 297. In particular, an officer is liable if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute. *Finnemen v. SEPTA*, 267 F.Supp.3d 639, 644 (E.D. Pa. 2017). A private party may be liable for malicious prosecution in two circumstances: (1) the private individual provides knowingly false statements to an official, or (2) the private individual directs or pressures an official to initiate charges, thereby making the officer's

intelligent use of discretion impossible. *See Bradley v. Gen. Accident Ins. Co.*, 778 A.2d 707, 711 (Pa. Super. 2001). The purpose of the second element, referred to as the favorable termination rule, "is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). As to the third element, probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Direct and personal involvement in the alleged constitutional violation is a requirement for § 1983 liability. *Jutrowski v. Twp. of Riverdale,* 904 F.3d 280, 289 (3d Cir. 2018). However, "[i]t is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions.' If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Halsey*, 750 F.3d at 297 (citations and footnote omitted). Thus, "[p]olice officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor." *Thomas v. City of Philadelphia*, 290 F.Supp.3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey*, 750 F.3d at 297). "In particular, an officer is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material

information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.' " *Thomas*, 290 F.Supp.3d at 379.

To survive the motion for summary judgment, Brown's claims require him to establish that the Officers lacked probable cause to believe Brown committed a crime. *See Simonson v. Borough of Taylor*, 839 F. App'x 735, 738 (3d Cir. 2020) (holding that Fourth Amendment claims for unlawful search and seizure based on malicious prosecution, false arrest, and false imprisonment all require the plaintiff to establish that the defendant lacked probable cause to believe the plaintiff committed a crime). The Third Circuit has set out the contours of the probable-cause inquiry as follows:

> "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. *See Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.") (citations omitted); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir.2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). An arrest was made with probable cause if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations omitted). In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir.2003). Importantly for this case, it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."), or whether a person is later acquitted of the crime for which she or he was arrested, *DeFillippo*, 443 U.S. at 36, 99 S.Ct. 2627; *see also Devenpeck*, 125 S.Ct. at 594 ("The rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with [ ] precedent.").

*Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (internal citations omitted) (alterations in original).

Therefore, the Court must "assess whether any reasonable juror could find that [Brown] lacked the requisite mental state for each of the crimes charges." *Dellenbaugh v. Gobrecht*, No. 2:18-CV-01108-CRE, 2020 WL 5526655, at *5 (W.D. Pa. Sept. 15, 2020) (citation omitted). If probable cause exists for even one of the charged offenses, Brown's malicious prosecution claim must fail. *Dellenbaugh*, 2020 WL 5526655, at *5. Each offense will be addressed separately.

### 1. Resisting Arrest

As to Brown's claims for malicious prosecution as to the charge of resisting arrest, no reasonable jury could conclude that the Officers lacked probable cause to arrest and charge Brown with this offense. A person resists arrest under Pennsylvania law "if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa. C.S.A. § 5104. "[I]t is not criminal merely to 'flee arrest.' However, where circumstances of the flight expose the pursuing officers to substantial danger, a conviction for resisting arrest is proper." *Com. v. Miller*, 475 A.2d 145, 146 (Pa. Super. 1984) (internal citations and quotation marks omitted). No reasonable juror could conclude that Officers Perugino and Chaudry lacked probable cause for resisting arrest.

Here, the complaint alleges that the Officers lacked probable cause and, instead, fabricated evidence to create probable cause. (Doc. 1, at 2-4). Brown avers that Officer Perugino "lied in his second criminal complaint when he stated that during the encounter the Plaintiff was looking around like he wanted to flee," and lied when he stated Brown "stood

up and tried to run." (Doc. 1, ¶ 2). Brown claims that "[t]he original complaint has been suppressed because it does not state the Plaintiff was looking to flee, or tried to flee." (Doc. 1, ¶ 2). Brown maintains that he did not attempt to run, but admits that he resisted Officer Chaudry's attempt to handcuff him and that he engaged in a scuffle with the officers. (Doc. 1, ¶¶ 2-3). Brown alleges that he was not intoxicated, but does not deny that he had been drinking, smelled of alcohol, or that the can of Steel Reserve belonged to him. (Doc. 1, ¶¶ 2-3). These allegations are based solely on a comparison of the initial affidavit of probable cause and the re-filed affidavit of probable cause. (Doc. 1, at 2-4).

Upon a review of these documents, the Court finds that the affidavit of probable cause for the re-filed charges is identical to the initial affidavit, except for the addition of the Flight to Avoid Apprehension charge and a final paragraph noting ADA Adam approving the re-filing, and the slight alteration of the following paragraph:

> I asked BROWN to sit on the wall until the issue with the GRADY'S license **and the open container** was resolved. All while talking to BROWN he made several furtive movements: taking his hands in and out of his pockets, occasionally having something in his hands, **which he was instructed not to do**. He would pull his pants up, would not stay seated on the wall and would stand up and he would constantly move away from me.

(Doc. 18-2, at 8; Doc. 18-5, at 9-10).

In addition, contrary to Brown's assertions, both the initial affidavit and the re-filed affidavit state Brown "pulled away from Officer Chaudry and tried running." (Doc. 18-2, at 8; Doc. 18-5, at 9). While neither affidavit explicitly states that Brown was "looking around like he wanted to flee," both indicate Brown was making furtive movements, which include moving away from the officers and ignoring directions. (Doc. 18-2; Doc. 18-5). Moreover, Officer Perugino's police report indicates that Brown was "looking for a good means by which to flee," while Officer Chaudry's report states Brown was "looking over my right shoulder as

though he was looking for an escape route." (Doc. 18-3, at 5-8). Both reports were completed and approved before the initial charges were dismissed. (Doc. 18-3, at 5-8). Significantly, this refutes Brown's allegation that Officer Perugino only added lies about his attempts to flee to the re-filed affidavit "out of spite because the charges were dismissed at [Brown]'s preliminary hearing." (Doc. 1, ¶ 5).

It is undisputed that Brown had an active NCIC warrant for Flight to Avoid Apprehension at the time of the initial arrest, that Brown resisted when Officer Chaudry attempted to handcuff him, and that Brown engaged in a scuffle with Officers Perugino and Officer Chaudry. (Doc. 18-2, at 8; Doc. 1, ¶ 3). It is also undisputed that Brown had no drugs, firearms, or other contraband on him when he was arrested. (Doc. 18-3, at 5-6). Brown does not aver, in his complaint or his brief in opposition to Defendants' motion for summary judgment, that Officer Perugino's statements in the affidavits that Brown smelled of alcohol and was within arm's reach of a can of Steel Reserve were false. (Doc. 1, ¶¶ 2-7).

As such, the Court finds that no reasonably prudent juror would conclude that the Officers lacked probable cause to arrest and charge Brown with Resisting Arrest. (Doc. 18-3); *see Wright*, 409 F.3d at 602.

### 2. Public Drunkenness

As to Brown's claims for malicious prosecution as to the charge of public drunkenness, no reasonable jury could conclude that the Officers lacked probable cause to arrest and charge Brown with this offense. Under Pennsylvania law, a person is guilty of public drunkenness if "he appears in any public place manifestly under the influence of alcohol or a controlled substance . . . to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa. C.S.A. § 5505. Here, the only evidence that Defendants

cite to is the fact that the Officers observed Brown as intoxicated because he "smelled of alcohol and was within arm's reach of a can of Steel Reserve." (Doc. 19, at 14). While it is problematic that Brown was not given a field sobriety test, a breathalyzer or a blood or urine test for alcohol or any controlled substance, the failure to administer these tests does not negate that the Officers observed Brown as intoxicated by an odor of alcohol and by Brown's proximity to a can of alcohol. The Officers also observed Brown's intoxication when he attempted to flee from Officer Chaudry, which resulted in a scuffle and Officer Chaudry deploying his taser, endangering both Brown and the Officers. *See Sargent v. Commw. of Pennsylvania*, No. 3:13-CV-00730, 2015 WL 2356906, at *4 (M.D. Pa. May 15, 2015); *Vega v. Chief Matthew Nestor*, No. 4:06-CV-2287, 2012 WL 13162666, at *2 (M.D. Pa. Feb. 16, 2012). Therefore, the Court finds the undisputed record establishes that the Officers had probable cause to arrest Brown for public drunkenness.

### 3. Flight to Avoid Apprehension

Finally, regarding Brown's claims for malicious prosecution as to the charge of flight to avoid apprehension, the Court finds that no reasonable juror could conclude the Officers lacked probable cause to arrest and charge Brown under this offense. Under Pennsylvania law, a person is guilty of flight to avoid apprehension if he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment . . . . 18 Pa. C.S.A. § 5126(a). As noted above, it is undisputed that Brown had an active NCIC warrant for Flight to Avoid Apprehension at the time of the initial arrest, that Brown resisted when Officer Chaudry attempted to handcuff him, and that Brown engaged in a scuffle with Officers Perugino and Officer Chaudry. (Doc. 18-2, at 8; Doc. 1, ¶ 3). As such, knowing Brown had a history of flight to avoid apprehension, an active NCIC

warrant, made several furtive movements, and actually tried to flee when Officer Chaudry attempted to handcuff him, the Court finds that no reasonably prudent jury would conclude that Officer Perugino lacked probable cause to arrest and charge Brown with flight to avoid apprehension. (Doc. 18-3); *see* *Wright*, 409 F.3d at 602. Notwithstanding, because Defendants had probable cause to charge Brown with Resisting Arrest, Public Drunkenness, and Flight to Avoid Apprehension, his claim for malicious prosecution under the Fourth Amendment must fail. *See* *Harvard*, 973 F.3d at 203.

Accordingly, summary judgment is granted as to Brown's Fourth Amendment claims for malicious prosecution.

IV.  **CONCLUSION**

Based on the foregoing, Brown's motion to compel discovery (Doc. 16) is **DENIED**. In addition, Defendants' motion for summary judgment (Doc. 17) is **GRANTED**, judgment shall be entered in Defendants' favor and against Brown, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: June 30, 2023          *s/ Karoline Mehalchick*
                              **KAROLINE MEHALCHICK**
                              **Chief United States Magistrate Judge**

- 23 -